IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

REBECCA A. LEMON,

    Plaintiff,

v.                                    No. 13-1437-SAC

LABETTE COMMUNITY COLLEGE;
DELYNA BOHNENBLUST;
COFFEYVILLE COMMUNITY COLLEGE;
and ANASTASIA O'CONNELL,

    Defendants.

MEMORANDUM AND ORDER

This 42 USC § 1983 case comes before the Court on the motion of Defendants Labette Community College (LCC) and Delyna Bohnenblust to dismiss the sole remaining count against them[1] because it fails to state a viable claim for relief. Plaintiff contends that these defendants denied her due process property right by not admitting her as a transfer student into LCC's RN program.

**I. Standard for Motion to Dismiss**

To survive a motion to dismiss, a complaint must have facial plausibility.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] Plaintiff voluntarily dismissed these defendants from the only other count alleged against them. *See* Dk. 14 (dismissing them from Count II – deprivation of liberty interest).

> 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557.

*Ashcroft v. Igbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 2012 WL 364058, at *3 (10th Cir. Feb. 6, 2012).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's … complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). The court accepts all well-pled factual allegations as true and views these allegations in the light most favorable to the nonmoving party. *United States v. Smith*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*,

558 U.S. 1148 (2010). The court, however, is not under a duty to accept legal conclusions as true. *Iqbal,* 556 U.S. 662. "Thus, mere 'labels and conclusions' and 'formulaic recitation of the elements of a cause of action' will not suffice." *Khalik*, 2012 WL 364058, at *2 (10th Cir.Feb.6, 2012) (quoting *Twombly*, 550 U.S. at 555).

In evaluating a Rule 12(b)(6) motion to dismiss, the court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). But in considering the complaint in its entirety, the Court also examines any documents "incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), and documents attached to the complaint, *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) (quotations and citations omitted).

## II. Undisputed Facts

Defendants have set out the relevant facts in their memorandum, and Plaintiff has not challenged them. Accordingly, for purposes of this motion, the Court finds the following facts to be uncontroverted.

Defendant LCC is a municipality or political subdivision governed by a board of trustees. Dr. Delyna Bohnenblust is Director of the LCC's nursing program.

3

In October of 2011, plaintiff was accepted into Coffeyville Community College's (CCC) nursing program. Plaintiff participated in that program during the spring and fall semesters of 2012. In December of 2012, she graduated from the licensed practical nursing (LPN) portion of the program with a 4.0 GPA in the core nursing courses and a 3.92 GPA overall. In January of 2013 she became certified as an LPN.

Plaintiff was told that she had been accepted into CCC's RN program, but plaintiff chose, instead, to apply to the RN program at LCC because it was accredited by the Accreditation Commission for Education in Nursing, Inc., while CCC's nursing program was not. In January of 2013, plaintiff began taking prerequisite courses at CCC to become a RN at LCC. Through January and February of 2013, plaintiff completed the paperwork for her application for admission into LCC's RN program. Plaintiff received an "A" in her prerequisite classes.

On April 10, 2013, Defendant Bohnenblust advised plaintiff that she needed to have reference forms completed by her CCC clinical nursing instructors before she could be admitted into LCC's nursing program. The blank reference forms consisted of two pages. The first page, entitled "Prospective Student Nurse Reference Form," required the applicant to sign a provision at the top stating: "I waive my right to view this reference form." The form informed the individuals who would be critiquing the applicant,

"This reference is confidential," and directed them to return the form directly to the LCCNP.

The second page of the reference form was entitled "Articulating LPN Clinical Reference Form." This page was required only for LPNs who were applying for the RN level of LCC's nursing program, such as Plaintiff. A clinical LPN instructor was to complete the form by marking a box "yes" or "no" to the following statements regarding the applicant:

Prepares and administers medication accurately;

Administers treatment and nursing care with safety;

Performs basic nursing skills and techniques accurately; and

Maintains patient confidentiality.

(Exhibit 1, p. 2)

Plaintiff submitted the clinical reference forms to four of her CCCNP nursing instructors. On April 15, 2013, Dr. Bohnenblust advised plaintiff that she had received three completed reference forms, and requested to meet with plaintiff. Two of those forms were positive regarding plaintiff, and one was not.

At the meeting on April 17, 2013, Dr. Bohnenblust advised plaintiff that one of the reference forms had adverse comments with "legal implications" regarding plaintiff. Dr. Bohnenblust further advised plaintiff that because of the adverse clinical reference, plaintiff would not be accepted into LCC's nursing program for training to become an RN. Dr.

Bohnenblust refused to identify the individual who gave the adverse reference regarding plaintiff, and declined to give plaintiff a copy of the adverse reference form.

LCC's 2013 fall semester began without plaintiff as an enrolled student. On October 11, 2013, plaintiff spoke with Dr. Bohnenblust's administrative assistant who identified the nursing instructor who had given plaintiff the adverse clinical reference. The administrative assistant told plaintiff that she would make a copy of plaintiff's application file for plaintiff if Dr. Bohnenblust would allow it.

On October 17, 2013, Dr. Bohnenblust met with plaintiff. Plaintiff requested a copy of her LCC nursing program application file and the adverse reference form. Plaintiff gave Dr. Bohnenblust a notarized written request for a copy of the file, but Dr. Bohnenblust refused to provide it even though the file was on her desk. On October 23, 2013, Dr. Bohnenblust sent plaintiff a letter acknowledging plaintiff's request and indicating that plaintiff would need to sign a release of information form.

On October 29, 2013, plaintiff met again with Dr. Bohnenblust and signed the release form. Dr. Bohnenblust gave plaintiff a one-page computer print-out which stated the following reason for rejection of plaintiff's LCCNP application:

> For inclusion in the applicant pool, all questions on the Articulating LPN Clinical Reference Form must be answered "yes." Not all of the Articulating LPN Clinical Reference Forms were answered "yes."

(Doc. 10 at 9, ¶ 40.) In addition to the one-page computer print-out, plaintiff was also given a one-page document entitled "Calculation of GPA for Applicants." Dr. Bohnenblust said that the other documents in plaintiff's application file (including the reference forms) had been shredded.

In Count I of this action, plaintiff contends that the Labette Community College defendants deprived her of a protected property right in her education without due process of law in violation of the Fourteenth Amendment. Plaintiff does not seek monetary damages but instead seeks the following declaratory and injunctive relief:

> a) an order that plaintiff meets the qualifications for admission to LCCNP under Kansas Law;
> b) an order compelling Labette Community College to conduct a hearing to amend plaintiff's educational records;
> c) an order compelling the Labette College defendants to admit plaintiff into the LCCNP-RN;
> d) appropriate injunctive and/or declaratory relief as the Court deems just and proper; and
> e) plaintiff's reasonable attorney fees and the costs of the action.

(Doc. 10 at 11.)

### III. Analysis

Defendants contend that plaintiff has failed to make a plausible claim that she has any due process property interest in being admitted to the RN program at Labette Community College.

Property interests protected by due process are "defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33

L.Ed.2d 548 (1972). See *Goss v. Lopez,* 419 U.S. 565, 572–573, 95 S.Ct. 729, 735–736, 42 L.Ed.2d 725 (1975) (recognizing a property interest in public education). Additionally, mutually explicit understandings implied from 'the promisor's words and conduct in the light of the surrounding circumstances' " may operate to create property interests. *Perry v. Sindermann*, 408 U.S. 593, 601–602, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). *See Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) (implied contracts). But even those understandings or tacit agreements must support "a legitimate claim of entitlement" under " 'an independent source such as state law....' " *Id.,* at 602, n. 7, 92 S.Ct., at 2700, n. 7 (quoting *Board of Regents v. Roth,* 408 U.S., at 577, 92 S.Ct., at 2709). *See Ewing*, 474 U.S. at 224, n. 9.

Plaintiff's amended complaint alleges that two Kansas statutes give rise to her property interest: K.S.A. §§ 72-116 and 76-117. Dk. 10. But plaintiff admits in her response to defendants' motion to dismiss that she incorrectly cited these statutes, and that neither applies to this case. Dk. 15, p. 5, n. 1. The Court agrees.

Plaintiff's response to the motion to dismiss alleges a new source of her alleged property right - various Kansas regulations governing community colleges and nursing programs coupled with the particular circumstances of this case. Dk. 15, p. 10. Plaintiff contends her property right springs from "the liberal admission requirements to community colleges, students' rights

8

to transfer credits and Plaintiff's exemplary educational record." *See* Dk. 15, p. 4-10, citing through K.A.R. 88-26-16; K.A.R. 60-2-107.

But none of the cited regulations gives the plaintiff a legitimate claim of entitlement to be admitted to the RN program at LCC, either as a transfer student or otherwise. The regulations establish criteria to be "eligible for admission to any community college," *see* K.A.R. 88-26-3, but do not state that each student who meets the criteria shall be admitted to a community college, or to a particular program within that college. LCC remains free not to admit students even if they meet the stated requirements. Similarly, the regulations require each community college to accept credits from all courses and programs that are "substantially equivalent" to those offered at the community college, *see* K.A.R. 88-26-4, but do not require the community college to accept every transfer student from another community college and admit them into a specific program. And although Kansas statutes establish criteria governing schools of nursing, plaintiff admits that those "statutes and regulations do not address admission into a nursing program." Dk. 15, p. 6. A regulation requires each nursing education program to have "clearly defined written policies for," among other things, "admission" and "transfer students," but the amended complaint does not allege that LCC lacks such policies. *See* K.A.R. 60-2-107.

The Tenth Circuit has held, based on various state laws, that students at public institutions may have a protected property interest in their

9

*continued* enrollment. *Harris v. Blake,* 798 F.2d 419, 422 (10th Cir.1986) (finding part-time graduate psychology student had a protected property interest); *Gaspar v. Bruton,* 513 F.2d 843, 850 (10th Cir. 1975) (finding a student in a public vocational-technical school's nursing program had a protected property interest). *See also Assenov v. University of Utah*, 553 F.Supp.2d 1319, 1327 (D.Utah 2008) (finding property right in student's continued enrollment in the doctoral program of the University of Utah College of Engineering's Nuclear Engineering Program). Thus students, once admitted to a post-secondary school, may have substantive or procedural property rights that would extend certain protections to them regarding their dismissal. *See e.g., Regents of University of Michigan v. Ewing*, 474 U.S. 214, 214, 106 S.Ct. 507, 507) (1985) (finding no due process deprivation even assuming the student's property interest in a six-year program of study culminating in an undergraduate degree and a medical degree gave rise to a substantive right under due process clause to continued enrollment free from arbitrary state action.); *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston University,* 245 F.3d 1172, 1181 -1182 (10th Cir. 2001) (finding dismissal of student from university's nursing program raised fact issues relevant to procedural and substantive due process rights); *Board of Curators of the Univ. of Mo. v. Horowitz,* 435 U.S. 78, 85-91, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (finding medical school student received all the

process she was due with respect to her dismissal, even absent a formal hearing).

Plaintiff alleges she too has a "property interest in continuing education in a nursing program at Labette Community College." Dk. 10, p. 10. But Plaintiff was never admitted to any nursing program at Labette Community College. She began nursing school at CCC and desired to transfer to LCC but failed to receive the positive references that were required for all persons seeking admission to LCC's RN program.

Neither the Tenth Circuit nor the United States Supreme Court has found a protected property interest on behalf of persons applying to a particular undergraduate program such as nursing. In fact, the "[d]iscretion to determine, on academic grounds, who may be admitted to study, has been described as one of "the four essential freedoms" of a university. (Citations omitted.)" *Regents of University of Michigan v. Ewing*, 474 U.S. 214, at 226 n. 12 (1985). And courts have declined to recognize any property right in admission to graduate school. *See e.g., Gonzalez v. Southern Methodist University*, 536 F.2d 1071 (5th Cir. 1976), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1688, 52 L.Ed.2d 383 (1977) (no property right to be admitted to law school); *Phelps v. Washburn University of Topeka*, 632 F.Supp. 455, 458-59 (D.Kan. 1986) (same); S*elman v. Harvard Medical School,* 494 F.Supp. 603, 619 (S.D.N.Y.1980) (no property right for a

qualified student at a foreign medical school to transfer admission into a U.S. medical school), *affirmed,* 636 F.2d 1204 (2d Cir. 1980).

Because plaintiff has not set forth a plausible claim that she has a protected property interest in her admission to LCC, the motion to dismiss shall be granted. Plaintiff has voluntarily dismissed her only other claim against Defendants Labette Community College and Delyna Bohnenblust, so they are hereby dismissed from this case.

IT IS THEREFORE ORDERED that the motion to dismiss filed by Defendants Labette Community College and Delyna Bohnenblust (Dk. 12) is granted.

Dated this 11th day of March, 2014, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge